NITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| ADMIRAL INSURANCE COMPANY, | Case No. 2:15-cv-00413-BLW |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| OMEGA DEMOLITION, CORP., | |
| Defendant. | |

# INTRODUCTION

The Court has before it Defendant's Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the Alternative, to Transfer under 28 U.S.C. §§ 1631 or 1404(a). (Dkt. 7-1). The motion is fully briefed and at issue and the Court has determined that the decisional process will not be aided by oral argument. For the reasons below, the Court grants the motion and will transfer the case to the Northern District of Illinois under 28 U.S.C. § 1631.

# BACKGROUND

Plaintiff Admiral Insurance Company ("Admiral") is organized in Delaware and has its principal place of business in New Jersey. *Compl.* ¶ 2, Dkt. 1. In February 2013, Admiral issued an insurance policy (the "Policy") to Advanced Explosives Demolition, Inc. ("AED"). *Id.* ¶ 15. AED is organized in Idaho with its principal place of business in Tensed, Idaho. *Id.* ¶ 3. In May 2013, AED contracted with Omega Demolition

Corporation ("Omega"), an Illinois corporation with its principal place of business in Elgin, Illinois. *Id.* ¶¶ 3, 13; *Def. Reply Br.* at 3, Dkt. 18. AED's and Omega's contract (the "Subcontract") required AED to provide demolition services for Omega on the Milton-Madison Bridge, which crosses the Ohio River between Milton, Kentucky and Madison, Indiana. *Compl.* ¶¶ 3, 13, Dkt. 1.

During the Milton-Madison Bridge project, one of Omega's employees, James McWorthey, became injured. *Id.* ¶¶ 6-11. McWorthey sued Omega for his injuries and obtained a judgment for $35,000,000 plus interest. *Def. Br.* at 5, Dkt. 7-1; *Pl. Resp. Br.* at 3, Dkt. 16. Omega sought coverage under the Policy by virtue of the Subcontract, which required AED to name Omega as an "Additional Insured(s) and Certificate holder" on "all policies of insurance except Workers Compensation." *Subcontract* at 9, Dkt. 1-3.

Thereafter, Admiral filed this declaratory judgment action to determine whether Omega is entitled to insurance coverage as an additional insured under the Policy. *Compl.* ¶ 61, Dkt. 1. Omega now asks the Court to either (1) dismiss the case for lack of personal jurisdiction; or (2) transfer the case to the Northern District of Illinois under 28 U.S.C. §§ 1631 or 1404(a). *Def Br.* at 2, Dkt. 7-1.

## ANALYSIS

**1. Omega's Motion to Dismiss for Lack of Personal Jurisdiction**

To withstand Omega's motion to dismiss under Fed. R. Civ. P. 12(b)(2), Admiral must show that the Court has personal jurisdiction over Omega. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the motion is based on written

materials instead of an evidentiary hearing, Admiral need only make a *prima facie* showing of jurisdictional facts to withstand Omega's motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In addressing Omega's motion to dismiss, the Court must take Admiral's uncontroverted allegations in its complaint as true and resolve factual disputes in affidavits in its favor. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). However, where Omega offers evidence to support its motion, Admiral may not simply rest on the bare allegations of its complaint. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Instead, Admiral must come forward with facts, by affidavit or otherwise, to rebut. *Id.*

Where, as here, no federal statute governing personal jurisdiction applies, the Court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Idaho's long-arm statute, Idaho Code § 5-514, allows a broader application of personal jurisdiction than due process permits, the Court need look only to due process to determine personal jurisdiction. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009). Thus, under Idaho law, the statutory and due process analyses are the same. *Id.*

Exercising personal jurisdiction over a defendant comports with due process if the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (internal quotation marks omitted)). In turn, sufficient minimum contacts can give rise to general or specific personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). General personal jurisdiction arises if the defendant's forum activities "are substantial, continuous and systematic," whereas specific personal jurisdiction arises if the defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *Id.* Here, Admiral does not assert general jurisdiction. Accordingly, the appropriate inquiry is whether the Court has specific jurisdiction over Omega.

The Ninth Circuit analyzes specific personal jurisdiction under a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205-06 (quoting *Schwarzenegger*, 374 F.3d at 802). Admiral bears the burden of satisfying the first two prongs. *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If Admiral succeeds, the burden then shifts to Omega to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). Here, Omega challenges only the first of the three prongs.

### A. Purposeful Availment

The first prong of the specific personal jurisdiction test includes both purposeful direction and purposeful availment. Purposeful direction generally applies to tort claims, in which the Court applies an effects test focusing on the forum where the defendant's actions were felt, regardless whether the actions occurred in that forum. *Yahoo! Inc.*, 433 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at 803). In contrast, purposeful availment applies to contract claims, in which the Court examines whether the defendant "'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802) (alterations in original).

Because this case involves a coverage dispute based on a contract, purposeful availment is the proper test. Admiral contends that Omega purposefully availed itself of the laws of Idaho by entering into the Subcontract with AED. *Pl. Resp. Br.* at 5, Dkt. 16. However, a contract between a citizen of the forum and a non-citizen, by itself, is insufficient to establish purposeful availment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Accordingly, the Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant purposefully established minimum contacts with the forum. *Id.* at 479. This analysis is designed to ensure that the defendant will not be haled into a jurisdiction

solely based on the plaintiff's unilateral activity or random, fortuitous, or attenuated contacts. *Id.* at 475.

In support of its argument that Omega purposefully availed itself of the laws of Idaho, Admiral puts forth the following: (1) Omega communicated with AED in Idaho and negotiated the subcontract with AED in Idaho; (2) Omega made payments under the Subcontract via wire transfer to AED's bank account in Idaho; (3) AED performed various tasks under the Subcontract in Idaho; (4) the indemnification agreement in the Subcontract creates a continuing obligation between Omega and AED; (5) Omega breached the Subcontract, which in turn damaged AED in Idaho; and (6) Omega sought coverage under the Policy, which was issued in Idaho to an Idaho Corporation. None of these arguments—taken alone or together—are persuasive.

First, with regard to communication and negotiation, Omega's contacts with the forum state were insufficient to invoke the benefits of Idaho law. Omega is an Illinois corporation with its principal place of business there. It is undisputed that Omega has never performed any work in Idaho, nor has any Omega representative set foot in Idaho to conduct business for Omega. *Def. Br.* at 3, Dkt. 7-1; *Gerage Aff.* ¶¶ 3-4, Dkt. 7-2. Moreover, Omega did not visit Idaho to negotiate the Subcontract. Rather, Omega and AED negotiated the Subcontract via phone and email. *Gerage Aff.* ¶¶ 7-9, Dkt. 7-2. Omega and Admiral dispute who initiated the contact that led to the Subcontract, and the Court must resolve this factual dispute in favor of Admiral. *See Murphy v. Schneider Nat'l. Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). Even assuming Omega initiated contact,

Omega did not hire AED for an Idaho-based project, and there is no evidence that Omega targeted AED because of or otherwise benefitted from AED's Idaho citizenship. Accordingly, these facts do not establish purposeful availment. *See Applied Underwriters, Inc. v. Combined Mgmt., Inc.*, 371 F. App'x 834, 835 (9th Cir. 2010) ("Even if Combined initiated the transaction through its broker, that initial contact and the subsequent negotiations are insufficient on their own to establish purposeful availment because 'ordinarily "use of the mails, telephone, or other international communication simply do not qualify as purposeful activity"'") (citations omitted).

Admiral nevertheless contends that Omega purposefully availed itself of the laws of Idaho because it made multiple payments under the Subcontract "by wire transfer to AED's bank account in Idaho." *Pl. Resp. Br.* at 10, Dkt. 16. But simply making payments to AED is insufficient to establish purposeful availment. *See Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984) (declining to find purposeful availment even when defendant sent payments to the forum state). And Admiral points to no authority that supports its proposition that a defendant somehow avails itself of the forum state simply by sending payments to a bank account located within that forum.

Similarly, while Admiral also argues that Omega purposefully availed itself of the laws of Idaho because AED engaged in Idaho-based preparations for the Subcontract, those preparations constitute unilateral activity insufficient to confer personal jurisdiction. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) ("It is well settled that '[t]he unilateral activity of those who claim some relationship with

a nonresident defendant cannot satisfy the requirement of contact with the forum State.'")
(citation omitted). Admiral points out that AED hired four Idaho residents to work on the
Project, created a site-specific work plan in Idaho, transported equipment from Idaho to
the Project site, and ordered the explosives to be used on the Project from Idaho.
Noticeably absent from this string of facts is any action taken by Omega in Idaho.

Admiral further asserts that Omega purposefully availed itself of the laws of Idaho
because the Subcontract created continuing obligations between Omega and AED in
Idaho. *Pl. Resp. Br.* at 12, Dkt. 16. Relying on *Barranco v. 3D Sys. Corp.*, 6 F. Supp. 3d
1068, 1081 (D. Haw. 2014), Admiral contends that the Subcontract's payment schedule,
coupled with the requirement that AED indemnify Omega in certain situations, constitute
continuing obligations. *Pl. Resp. Br.* at 12, Dkt. 16. While the *Barranco* court found
purposeful availment based on the parties' continuing obligations, the plaintiff's duty to
indemnify the defendant was not dispositive. 6 F. Supp. 3d at 1081. Instead, in addition to
the parties' indemnification agreement, the defendant "not only agreed to continue to
share the revenue that the . . . license fees and royalties generated, but also to employ
Plaintiff for five years." *Id.* Thus, the *Barranco* court concluded that the defendant had
"structured the transaction so as to create a continuing relationship and obligations with
Plaintiff in Hawai'i." *Id.*

Here, the Court finds that Omega did not structure the Subcontract to create
continuing obligations with AED in Idaho. The Subcontract requires AED to name
Omega as an "Additional Insured(s) and Certificate holder" on "all policies of insurance

except Workers Compensation." *Subcontract* at 9, Dkt. 1-3. The Subcontract also requires AED to maintain certain Commercial General Liability insurance related to "Products/Completed Operations" for a two-year period. *Id.* at p. 7. Finally, the Subcontract requires AED to indemnify Omega in certain situations, including against all loss which Omega "may sustain in connection with any claim of any kind[,]" and against losses resulting from personal injury or property-loss claims. *Id*. at pp. 4, 5 §§ 1.14, 1.25. None of these obligations would necessarily have any effect in Idaho specifically. Instead, the Subcontract contemplates obligations that would have effect in Illinois, not Idaho. The Subcontract provides that "policies of insurance, security, indemnity and the like . . . shall be issued by a responsible carrier(s) . . . licensed to do business in the State of Illinois or in the state in which the work is being performed." *Id.* at p. 4, § 1.16, Dkt. 1-3. Moreover, the Subcontract contains a choice of law and forum provision, which states that "this Agreement shall be governed by the laws of the State of Illinois with venue to lie in Cook County." *Id.* at p. 5, § 1.26. Omega hired AED for a discrete project that was completed in approximately three months. *Def. Reply Br.* at 4, Dkt. 18. And, AED's scope of work was limited to providing demolition services at the Milton Madison Bridge, which crosses the Ohio River between Milton, Kentucky and Madison, Indiana. Thus, the Subcontract did not create continuing obligations in Idaho.

Admiral's remaining two arguments are equally unpersuasive. If Omega purposefully availed itself of the laws of Idaho by allegedly breaching the Subcontract, as Admiral contends, then specific personal jurisdiction would exist in all breach of contract

cases where the resident plaintiff files suit against a non-resident defendant. Finally, Admiral has not pointed to any authority that provides a defendant purposefully avails itself of the laws of a forum state when it makes a claim for coverage under a policy issued in that state.

Because the Court finds that Omega did not purposefully avail itself of the laws of Idaho, the Court need not address the remaining two prongs of the personal jurisdiction test. The Court lacks specific jurisdiction over Omega.

## 2. Omega's Alternative Motion to Transfer.

In the alternative of dismissing the case, Omega asks the Court to transfer the case to the Northern District of Illinois under 28 U.S.C. §§ 1631 or 1404(a). Because the Court lacks personal jurisdiction over Omega, the Court only addresses Section 1631.[1]

Section 1631 provides that when jurisdiction is lacking, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. Thus, transfer of venue is proper under Section 1631 if three elements are met: "(1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised

---

[1] Title 28 U.S.C. § 1404(a) governs whether a case should be transferred from one proper forum to another. Because the Court lacks personal jurisdiction over Omega, Idaho is not a proper forum, making § 1404(a) inapplicable.

jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001).

Each element is satisfied here. First, the Court lacks personal jurisdiction over Omega, as discussed above. Second, the Northern District of Illinois could have exercised jurisdiction at the time Admiral filed suit. Personal jurisdiction would exist there over Omega because Omega's principal place of business is in Elgin, Illinois, which is within the Northern District of Illinois. *Def. Reply Br.* at 3, Dkt. 18. Subject matter jurisdiction would exist in the Northern District of Illinois under 28 U.S.C. § 1332 because diversity jurisdiction is present. *See Compl.* ¶¶ 2-4, Dkt. 1. Venue would be proper under 28 U.S.C. § 1391(b)(1) in the Northern District of Illinois because Omega's principal place of business is in Elgin, Illinois, which is within the Northern District of Illinois.

Finally, transferring the case to the Northern District of Illinois is in the interest of justice. Transfer of venue under Section 1631 is generally "in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and[]justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)). Dismissing the case would require the parties to file a new action elsewhere, ultimately wasting resources. And, as the parties' briefing demonstrates, litigation related to the underlying matter—McWorthey's accident—is already proceeding in the Northern District of Illinois. *Def. Br.* at 13-15, Dkt. 7-1; *Pl. Resp. Br.* at 4-5, Dkt. 16. Admiral points out that the defendant

in the Northern District of Illinois litigation has filed a motion to transfer the case to the Southern District of Indiana. *Pl. Resp. Br.* at 4, Dkt. 16. But whether that litigation might be transferred does not outweigh the justice that would be furthered by transferring the case to the Northern District of Illinois in lieu of dismissal. Thus, the Court concludes that the case should be transferred to the Northern District of Illinois under Section 1631.

## ORDER

**IT IS ORDERED:**

1. Omega's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Under 28 U.S.C. § 1631, or to Transfer Under 28 U.S.C. § 1404(a) (Dkt. 7) is **GRANTED IN PART**. This case is TRANSFERRED to the United States District Court for the Northern District of Illinois.

2. The clerk is directed to close this case and vacate all deadlines.

DATED: February 16, 2016

B. Lynn Winmill
Chief Judge
United States District Court